## John H. Kimball *v.* Estate of Harry Baxter.

*Construction of proviso to witness act of 1853. Statute of limitations. Report of referees.*

The word "action" in the proviso, to the witnes act of 1853, that it should not apply to any action commenced previous to November 28, 1852, where one of the parties to such action had deceased, *construed* as referring to the *cause of action.*

In proceedings against a deceased person's estate, the intestate, and not the administrator, is to be regarded as the party to the action, within the meaning of that act, and if he deceased, and the proceedings against his estate were commenced before the enactment of the witness act of 1852, the adverse party cannot be a witness to matters to which he could not be before the passage of that act.

Where a person admits an indebtedness or makes a promise, which may have reference to either or all of the several demands, or classes of demands; it must appear or be shown to which or how many of them it was applicable, before it should have the effect of taking any of them out of the statute of limitations.

The county court cannot, upon the report of referees, infer facts not found from others which are found by the referees, as they may upon the report of auditors.

Appeal from Commissioners. The defendant's intestate died in March, 1852; the claims of the plaintiff against his estate

were presented to the commissioners previous to November, 1852. An appeal was taken from their decision and report, and entered in the county court at the December Term, 1852, and, at that term, referred by the agreement of the parties. Before the referees, the defendant insisted upon the statute of limitations in reference to which they reported as follows:

"It appeared that the intestate deceased in March, 1852, and we find from the testimony of one John Stewart, a witness called by plaintiff, that said Harry Baxter, on one occasion, two or three years before his death, was present in the plaintiff's office, and said to the plaintiff, after speaking of having settled with some other person, 'We, or you and I ought to settle—I would not grudge $25, if it was done.' Plaintiff said, 'Yes,' right off; 'I would not value $50 if it was through with, you and I never settled,' to which last statement Baxter replied, 'I think not.' A week or two after this conversation, the witness Stewart, inquired of Baxter in the street, if he had settled with Kimball? He replied 'No, I dread it too, but we have got to get into it and settle it up; I am careless to let things lie so.'"

"It did not appear to what subject the parties referred in this talk about settlement, whether to the account, or receipt for demands or notes held by the parties against each other, then outstanding or to all of them together; and this whole conversation is stated above as proved."

The referees found and reported the balance due the plaintiff in the alternatives of a portion of his claims being barred or not barred by the statute of limitations, and they further reported, that the plaintiff was admitted as a witness generally, upon all the questions arising in the case, although objected to by the defendant; and that "in so deciding, and in all other respects" they intended to decide according to law.

The county court, at the December Term, 1854,— POLAND, J., presiding, — rendered judgment upon the report for the plaintiff to recover the largest sum reported. Exceptions by the defendant.

*Cooper & Bartlett* and *Sartle & Redfield*, for the defendant.

The plaintiff ought not to have been admitted as a general witness. The obvious meaning of the legislature was that existing

rights should not be changed when one party was living, the other deceased. Baxter was the real party to the subject matter of the litigation. The administrator is the mere creature of the statute, appointed to act in the place of the deceased. Comp. Stat. Ch. 50. 2 Black. Com. 511. 2 Kent, 414. *Sumner, Admr.* v. *Williams,* 8 Mass. 162. *Higley* v. *Smith,* 1 D. Chip. 409.

To prevent the operation of the statute of limitations, it ought clearly to appear that the acknowledgment related to the identical demand sought to be recovered. *Clark* v. *Dutcher,* 9 Cowen, 674. *Sands* v. *Gelston,* 15 John. 511. *Phelps* v. *Stewart & Wood,* 12 Vt. 256. A general admission of the party sought to be charged, that he was owing something to the plaintiff, without stating how much or what for, is not sufficient to take the demand out of the statute. *Pray* v. *Garcelon,* 5 Shep. 145. Where a defendant admitted that there ought to have been a settlement, between him and the plaintiff, but added that "little, if anything was due," the statute was not suspended, 2 Dev. 367.

*Plaintiff, pro se.*

The proviso to the act of 1853 does not apply. The plaintiff and the administrator of Baxter have been the only parties to the present suit, and neither have deceased. A new promise, or sufficient acknowledgment to prevent the operation of the statute of limitations was proved by the testimony of Stewart. *Phelps* v. *Stewart & Wood,* 12 Vt. 264. *Blake & Hart,* v. *Parleman,* 13 Vt. 574. *Admr. of Chapin* v. *Warden,* 15 Vt. 560. *Williams* v. *Finney,* 16 Vt. 297.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J. It appeared from the report of the referees, that they intended in all respects to decide according to law, and that the plaintiff, under objection, was admitted, generally, as a witness upon all questions arising in the matters referred, and we are to understand from the report, I suppose, that he did testify to important facts arising in the matters tried generally. The case is so understood by the parties, and has been argued upon that ground, and we are disposed so to consider it. The proceedings in this

suit were instituted before the passage of the law of 1852, the first section of which enacts that no person shall be disqualified as a witness in any civil suit or proceeding at law or in equity by reason of his interest in the event of the same, as a party, or otherwise. The third section of the act provides, " that it shall not affect any suit brought before and pending at the time the act went into effect. By the act of 1853, this provision was repealed, with a saving, that the repealing act should not apply to any action commenced before the passage of the act of 1852, where one of the parties to such action, had deceased previous to the enactment of the statute of 1853. It was evidently the intention of the legislature by this saving in the repealing act of 1853, to prevent the living party from having the advantage of being a witness in his own case against the estate of a dead man. It was presumed that the representatives of the deceased man could have no personal knowledge of the matters in controversy, and to admit the other party as a witness would destroy all equity, which, it seems, it was the intention of the legislature to preserve. The statute, if it can be consistently done, should be so construed as to carry out the intention of the legislature. The question then is, what did the legislature mean by the expression, " when one of the parties to such action has deceased." We apprehend there can be little or no doubt, in the connection in which it is used, they had reference to the cause of action ; and that the term *action* is used as an equivalent expression; and in common parlance it is no uncommon thing for us to speak of the action when, in strictness, we mean the cause of action. So understood, the intention of the legislature will be carried out obviously.

In a certain sense, Mr. Baxter was as well a party to the action as to the cause of action. The executor or administrator may technically be said to be the party to the action ; yet he appears as the representative of the deceased, and defends in his right and stead. With this view, the existing right of the parties would not be changed, where one was living and the other dead, and we think it was not the intention of the legislature to change the existing rights of the parties, to the subject matter of the litigation, where one was dead, as to suits pending at the time of the passage of the law.

The judgment of the county court would for this cause have to be reversed.

In regard to the statute of limitation, the finding of the referees is so imperfect, that it is difficult for a court of law to know what judgment should be rendered. They omit to find a very important fact. They say, " it did not appear to what the parties referred in their talk about settlement, whether to the account, or receipt for demands for collection, on notes held by the parties against each other, then outstanding," and referred to in their report, "or to all of them together." Most clearly, the admissions of Mr. Baxter could not take away any specific demand or claim out of the statute, unless the admission had relation to it. Where the words of the acknowledgment or promise are general, and without any declared reference to any particular debt, it is always a question of fact to be settled by the triers of the facts, from all the circumstances in evidence, to what debts the admissions or promise had reference. The referees say they give the whole conversation as proved. Still, it is none the less a matter of fact to be settled by the triers, to what claims or demands the admission or promise relates, and this of course must be, in many cases, an inference to be deduced from all the circumstances. It has sometimes been held that a general acknowledgment will be taken as sufficient to take a demand in suit out of the statute of limitations, and this upon the ground that the *onus* of proof was upon the defendant to show the existence of other demands to which it may apply. But it is a sound principle that, to avoid the effect of the statute, the admission must relate to *the* debt or debts sought to be recovered. In the case now at bar, it is shown that there were diverse dealings and debts ; and as matter of law the court cannot say that the admissions relate to the account, receipts for demands to collect, or notes, or any one of them, or to all of them. The referees should have settled this as a matter of fact. It may be said, that as the county court have rendered judgment for the largest sum, they must have found what the referees have not, that is, that the admissions related to all the demands. and that for that reason, there should be found no error in the judgment of the county court in this particular. I am aware that in the case of auditor's reports, judgments of the county court have been frequently sustained, by presuming that that court

may have *inferred* some fact, from those reported by the auditor, and which inference was not made by him, and that it was discretionary with the county court to make the inference themselves, or recommit the report to the auditor. This has been done upon the ground that the auditor was an officer of the court, and his court a branch of the county court; but it is not so with referees. *Swift* v. *Raymond,* 11 Vt. 317. A report of referees is to be accepted or rejected on the same grounds which determine the validity of an award of arbitrators. 1 Aik. 138. 10 Vt. 216. They are a court created by the voluntary act of the parties, and their finding final, both as to law and fact, unless by the rule of reference they are required to decide according to law, or they report that they did so intend to do, as in the present case. It was the duty of the referees to find facts enough to show that it was legal to render a a judgment for some certain specific sum; but no certain rule for damages can be given, until it is first found to what claims the admissions relate, and this duty alone is to be performed by the court which the parties have created; and besides, in the present case, the finding of the referees excludes all inference.

With regard to the sufficiency of the admissions to obviate the statute, we do not now feel called upon to decide. That can better be done when it is ascertained to what demands the admissions referred. It is possible they may be sufficient to obviate the statute as to some of the demands, and not as to the others.

We then reverse the judgment of the county court, and remand the cause to be further proceeded with in that court.