Park *v*. Pratt and Riddle.

LUTHER PARK *v*. SOLOMON S. PRATT AND THOMAS RIDDLE.

*Deed. Joinder. Pleadiag. Husband and Wife. Construction. Boundary. Referee. Practice.*

Under a deed to a husband and wife to hold during their lives and the life of the survivor of them, the husband, in an action of ejectment, may recover to the extent of the interest of both, without joining his wife as co-plaintiff.

Where a line is described in a deed as beginning on the south line of A's land, running east 15 degrees south on said A's line, and it turns out that said A's line runs east 13 3-4th degrees south, it is *held* that the words " on said A's line. " is the controlling description, and the course east 15 degrees south, is to be regarded as the false description.

The words " on said A's line," make A's land an abuttal, a boundary, and is in effect the same as if the deed had bounded the land granted, by A's land. A's line means the border, or extreme limit of A's land.

A's line means his true line, not the line of his occupancy as indicated by a division fence built by A. not on the true line, after the deed in question was executed.

The defendant, Riddle, was sufficiently in possession to make him liable in eject ment; and was also connected with the title by the deed to his wife.

A deed void on account of the land being held in adverse possession, is good between the parties. It is good in equity.

It has long been settled in this state, that where a referee does not state that he intended to decide according to law, and does not refer the question of law to the court, the court will not reverse his decision, unless it is apparent that he has violated some principle of right whereby injustice is done.

THIS was an action of ejectment for the recovery of the possession of a tract or parcel of land in Bennington, and was, by the agreement of the parties and a rule of court, referred to the determination of a referee, whose report was, agreeably to the said rule of reference, returned to the county court at the June Term, 1865.

It appeared from the referee's report that Lafayette Lyon and Nancy Booth, the wife of Roger Booth, were tenants in common of a piece of land. On the 12th day of January, 1847, they made partition thereof by deeds. On the first day of April, 1847, Roger Booth conveyed his interest in the premises after partition, to Silas Wilcox. On the 11th day of May, 1849, Wilcox quit-claimed his right and title to the premises to Trenor W. Park. On the 16th day of May, 1855, T. W. Park quit-claimed his right and title to M. C. Hall, and on the 19th day of May, 1855, M. C. Hall conveyed to Luther Park, the plaintiff, and his wife, during their lives, and the life of the survivor of them, the same premises.

On the 1st day of January, 1850, Lafayette Lyon, by deed of warranty, conveyed to Solomon S. Pratt, one of the defendants, the east half of the piece of land set to him in the partition, as above mentioned, lying on the south side of main street, in the east village of Bennington.

The deed from Lyon to Pratt was for the benefit of the wife of Thomas Riddle, the other defendant, it being purchased with her money. The conveyance of Wilcox to T. W. Park was for the benefit of Luther Park and wife, as conveyed to them by M. C. Hall, as above mentioned. S. S.Pratt, also, on the 18th day of July, 1860, conveyed the premises above described to Lydia H. Riddle, the said wife of Thomas Riddle.

In the spring of 1847 Lyon took the sole possession of the part set him in the partition, and Wilcox of the part set to Booth. After the conveyance of Booth to Wilcox in the spring of 1847, Lyon built a temporary fence across the south end of the lot, afterwards, as above stated, bought for Mrs. Riddle, which on the west side was four links, and on the east side six links, south of the true line between him and Wilcox, making a strip of land four rods in length and of the above width, which Lyon and his grantees have continued to occupy ever since, but not a quiet possession. When the defendants built a more permanent fence on the same line, which was soon after the conveyance by Lyon, a controversy commenced between the parties in this cause in reference to the true line, and the same has ever since continued.

Other facts are stated in the opinion. On the hearing on the said report at the said June Term, the court, KELLOGG, J. presiding, decided that the plaintiff was entitled to recover for his title and possession of, and in, the whole of the strip of land mentioned and described in the said report, against the defendants, and also for the sum of six cents damages and his costs, as mentioned in the said report, and rendered judgment accordingly. To this decision and judgment the defendants excepted.

*T. Sibley* and *J. B. Meacham*, for the defendants.

I. The plaintiff has failed to make out his title to the *locus in quo* described in his declaration or any part thereof. 1st. The referee finds that Lafayette Lyon, in the spring of 1847, actually enclosed

the land in dispute with a fence, and that said Lyon and his grantees have been in the adverse possession and actual occupancy of the same ever since; therefore the deeds from Silas Wilcox to Trenor W. Park, from Trenor W. Park to M. C. Hall, from M. C. Hall to Luther Park and wife, are void and of no effect against the said Lyon and his assignees; the ouster and disseizin having taken place while Silas Wilcox was the owner, this action cannot be maintained in the name of Luther Park; the action should have been brought in the name of Silas Wilcox, in whom was the legal title. *Robinson* v. *Douglass*, 2 Aik. 364; *Edwards* v. *Roys*, 18 Vt. 473; *University of Vermont* v. *Joslyn*, 21 Vt. 52; *Edwards* v. *Parkhurst*, 21 Vt. 472. 2d. The facts found by the referee show that the plaintiff has failed to make out even a *prima facie* case against the defendant Riddle; he being in no way connected with the title, and not being in possession at the time of the commencement of this suit, is entitled to a judgment for his costs. *Stevens, Adm'r.* v. *Griffith et al.*, 3 Vt. 448; *Skinner et al.* v *McDaniel*, 4 Vt. 418.

II. The deed from Booth to Wilcox does not cover the *locus in quo* described in the plaintiff's declaration and cannot by construction be extended beyond the courses and distances in said deed mentioned, viz: east 15 degrees south. Where courses and distances alone are given, the needle must govern as to the one and the claim as to the other. *Owen and Wife* v. *Foster*, 13 Vt. 263. Nor is this rule of construction varied or overcome by the reference in said deed on said Lyon's line, said Lyon's apparent line being the fence and his line of occupation the same, running east 15 degrees south, and making one and the same line, and though courses and distances must yield to known monuments and boundaries, they do not to imaginary lines whose truth or correctness must be established from evidence lying entirely outside of and disconnected with such line.

III. The foregoing points show that the action could not be sustained in the name of Luther Park provided his wife had been joined with him as plaintiff in the suit, nor could he maintain this suit without her being so joined. 1st. They are joint tenants and not tenants in common. The conveyance is to husband and wife, and within the exception in the statute. Gen. Stat., ch. 64, § 3. 2d. The words of survivorship are contained in the deed which is another ex-

·ception. Gen. Stat., ch. 64, § 2. 3d. Joint tenants must join and be joined as parties in all cases concerning their joint property. 1 Chitty's Pleading, 64 ; 1 *Hilliard* v. *Real Prop.* 581 ; 4 Kent's Com., 359.

*A. P. Lyman*, for the plaintiff, ·maintained.

I.   That the recital of degrees in the conveyance of real estate, is not to control fixed lines and known monuments. *Gates* v. *Lewis*, 7 Vt., 511. This suit is well brought by the plaintiff without joining his wife. *Willis* v. *Harrison*, 5 Meeson & Welsby, 141 ; *Jackson* v. *Leak*, 19 Wend. 339 ; *Griffith* v. *Hunton*, 7 J. J. Marsh. 385. The ·construction of the deed to the plaintiff and wife should be the same as it would have been if the conveyance had been to the plaintiff for life and to his wife during her life, if she survived him, she took nothing by the deed during her husband's life. Reeves' Dom. Rela. 133. Ejectment settles the right of possession, the title is only incidentally drawn in question, and is not decided. 1 Swift's Dig. 651. The wife can only be joined with her husband where her interest existed before coverture or where she is the meritorious cause of action and the promise is to her, or where the right of action is in *autre droit*. *Lee* v. *Chambers*, 1 Strobhart 112 ; Annual U. S. Dig. for 1847, 201. The statute gives to the plaintiff the right to maintain this suit. The language of the statute is, "Any person having claim to the seizin or possession of lands, tenements or hereditaments shall have an action by writ of ejectment, according to the nature of the case." Gen. Stat. 337, § 1. But should the court be of opinion that the wife should have joined, advantage should have been taken by plea in abatement, and can not be used as a defence on trial. *Wallis* v. *Harrison*, 5 Meeson & Welsby, 141 ; *Nash* v. *Skinner*, 12 Vt. 219 ; *Briggs* v. *Taylor*, 35 Vt. 66.

The opinion of the court was delivered by

PECK, J.   The action is ejectment. The case was referred to a referee by the county court, and upon a special report of the referee the county court rendered judgment for the plaintiff to recover the whole of the strip of land described in the report as in dispute. The defendants except to that decision.

The plaintiff claims title to the small strip of land through a chain of deeds commencing with a deed from one Booth, and ending with

Park *v.* Pratt and Riddle.

a deed from M. C. Hall to the plaintiff and his wife, to have and to hold during their lives, and the life of the survivor of them. The referee submits the question to the court, whether the plaintiff can maintain the action without joining his wife, his co-grantee, as co-plaintiff in the action. There is no doubt but that, at common law, joint tenants may join as plaintiffs. But it is insisted, on the part of the defence, that they must join, and some elementary books have been cited in favor of the proposition, that joint tenants must join. The defendant claims that the rule applicable to joint tenants applies in this case. It is claimed by the counsel on the part of the plaintiff, that it is at the election of joint tenants to join or not, and that if the general rule is that joint tenants must join in the action, yet in case of a title derived by deed to husband and wife, the husband may sue without joining the wife ; and further, that if the joinder of the wife is necessary, the objection can be taken only by plea in abatement. On the question as to the necessity of a plea in abatement, the counsel on both sides have argued from analogy to the rule in personal actions. If the rule that governs in actions *ex contractu* is applied to this case, no plea in abatement was necessary, for in such actions at common law, the non-joinder of a necessary party plaintiff is fatal under the general issue, although it is otherwise in case of the non-joinder of a necessary party defendant, with some exceptions, as where the plaintiff counts on a judgment, recognizance or other debt of record. If the rule applicable to actions of tort to personal property is applied, then to defeat the action the non-joinder, should be pleaded in abatement ; or the defendant may avail himself of it on the merits in apportioning, and thereby reducing the damages. The plaintiff cites *Wallis* v. *Harrison*, 5 Mees. & Wels. 141. In that case the premises were leased to the plaintiff and his wife for twenty-one years, the husband to a tenant in possession for nine years. The action was case by the husband for an injury to the reversion. The court under a plea that the plaintiff was not seized, held that the non-joinder of the wife was not a valid objection, and if it might have been, it should have been pleaded in abatement. This case is by no means decisive of the question, as it was an action for damages and not for the recovery of the land. It is said in Hill. on Real Prop., cited in argument, that joint tenants having one entire con-

nected right, must in general join and be joined in all actions respecting the estate. It would seem that this should be so where the action, like ejectment under our statute, is not only to recover possession of the land but to settle the title, if in an action by one of two or more joint owners he can recover only to the extent of his interest, as the defendant ought not to be subjected to a series of suits. But it appears from cases cited by the same author, that the rule is different in different states. It is said that in Connecticut, and in some other states, one joint tenant may sue alone. But under a conveyance to husband and wife the tenancy thereby created between them is not a joint tenancy, but a tenancy peculiar to itself. Hence it was decided in *Brownson* v. *Hull et al.*, 16 Vt. 309, that our statute of 1797 providing that a conveyance to two or more persons should be construed to create a tenancy in common, and not a joint tenancy, unless the instrument of conveyance expressly provided otherwise, did not apply to a conveyance to husband and wife, and that as between husband and wife under such a conveyance to them, the survivor takes the whole. It is said by ROYCE, J. in that case, in substance, that in case of joint tenants each has a seizin of the whole but a title only to his aliquot part; and in speaking of the tenancy under a conveyance to husband and wife, he says it differs from a joint tenancy in the entirety of title as well as seizin of each grantee in the whole estate; they have but one title and each owns the whole. It was upon this ground and upon the further ground that the husband is during coverture tenant in right of his wife of her interest, that the court in *Jackson* v. *Leak,* 19 Wend. 339, decided that under a title by a conveyance to plaintiff and his wife, the husband could maintain ejectment without joining his wife. The husband during coverture has the right of exclusive possession; and there would seem to be no necessity of joining the wife if, in a suit by husband alone, he can recover to the extent of the interest of both, so as to leave no occasion for another suit. Our statute authorizes tenants in common to join in an action of ejectment, but in this state if one of several tenants in common brings the action alone, he recovers the whole for himself and co-tenants, against a defendant having no title. *Johnson* v. *Tilden,* 5 Vt. 426; *Chandler* v. *Spear,* 22 Vt. 388; *Robinson* v. *Johnson,* 36 Vt. 69. The reason is much stronger that the

husband should be allowed, under a deed to himself and wife, to recover for himself and wife, to the extent of the interest of both. The non joinder of the wife therefore is no impediment to a recovery by the plaintiff, of the whole estate and interest of both.

The next question submitted to the court by the referee, is as to the construction of a deed in the claim of the plaintiff's title. It appears that, in 1847, Lyon and Booth owned a small lot of land in Bennington village, and made partition of it by executing mutual deeds. The division line between them is described, in these deeds, as beginning ten rods and twelve links south of the north-west corner of said real estate, *thence east, parallel with the highway leading through the village, about eight rods, to David Harwood's land.* Booth, by this division, took the south part and Lyon the north part. The plaintiff's title is through a succession of deeds of the part set to Booth, bringing the title down to him from Booth. The defendants claim title, under Lyon, to the east-half of the part set to Lyon in that partition under a deed from Lyon to Pratt, one of the defendants, who took the title in trust for the wife of Riddle, Riddle being the other defendant.

In Booth's deed to Wilcox, in the plaintiff's chain of title, the north line of the land conveyed is described as beginning at a point ten rods and twelve links from the south side of the highway, &c., which point is conceded to be the same as the point where the division line begins in the partition between Booth and Lyon, although under a different description; but instead of describing the line as running parallel with the highway, as in the partition deeds, it describes it as beginning " *on the south line of land owned by Lafayette Lyon,*" and running " *east 15 degrees south on said Lyon's line, about eight rods, to land owned by David Harwood.*" The referee finds that the true division line, in the partition deeds of Lyon and Booth, running parallel with the highway, runs east 13¾ degrees south, so that the difference between the course of Lyon's line and the line as described *by the compass* in Booth's deed to Wilcox, is 1¼ degrees.

Whether there is a strip of land still owned by Booth between the land of the plaintiff and the land of the defendant, by reason of this divergence of these lines, depends on the construction of this deed from Booth to Wilcox. If that part of the description which says

the line runs east 15 degrees south is to control, then the plaintiff has not the title to this strip in question ; but if the part of the description, which says it runs on Lyon's line, controls, then the plaintiff owns the strip, and the lands of the parties lie contiguous. It is conceded by counsel on both sides that monuments referred to in a deed, when ascertained, must control courses, or points of compass, called for by the deed, and the counsel both claim the benefit of this rule. We think as the deed describes the line as " beginning" " on the south line of land owned by Lafayette Lyon," thence " on said Lyon's line," that that is the controlling description, and that the course east 15 degrees south is to be regarded as the false description. It is obvious the intent was to make the line identical with Lyon's south line, especially as the grantor owned to that line. The extreme improbability, if not absurdity, of Booth's intentionally retaining a strip of land between the lands granted by this deed and the land of Lyon, four links wide at one end and six links wide at the other end, bears strongly against the construction contended for on the part of the defendant. It is said by the defendant's counsel, that Lyon's line ought not to control the course of the line indicated in the deed, because a line is invisible and intangible, and cannot be regarded as a monument. This is true in the abstract, in a mere mathematical sense. But in this description, it is something more than that. The deed describes the line as beginning on the south line of land owned by Lyon, and running on said Lyon's line. This makes Lyon's land an abuttal, a boundary, and is, in effect, the same as if the deed had bounded the land granted, north by Lyon's land. Lyon's line means the border, or extreme limit, of Lyon's land. Lyon's line is ten rods and twelve links south of the south side of the highway, and parallel with it, and is capable of being ascertained. The same question might have been raised on the partition deed from Booth to Lyon, which describes the division-line as running east, parallel with the highway. If we adopt the defendant's rule of construction, and say that line runs east, instead of running parallel, with the highway, the defendant loses the whole strip and much more, for want of title in Lyon, under whom he claims. It is insisted that if Lyon's line is the guide, it must be the line of occupancy as indicated by the division fence built by Lyon, and not the true line.

But the case shows that the fence was not built till after the deed in question, from Booth to Wilcox, was executed, so that Lyon's line must mean his true line. Taking the whole description together, we think the line in question is identical with Lyon's true line.

It is insisted that the report does not show sufficiently that the defendant, Riddle, was in possession of the land in dispute, and that he not being connected with the title, is not liable in this action. But it appears that in the spring of 1847, Lyon took possession of the land set to him in the partition, and built a division fence, enclosing the disputed land in with his, and that Lyon and his grantees have been in possession ever since, but not a peaceable possession. Riddle, too, is connected with the title by Pratt's deed to Riddle's wife, executed July 18th, 1860. It is further stated by the referee that when the defendants built a more permanent fence on the same line, which was soon after the conveyance by Lyon, a controversy commenced between the parties in this cause in reference to the true line, and the same has ever since continued. This sufficiently shows the defendants in possession, and such claim of title, as to obviate this objection to a recovery, especially as it does not appear that any question as to defendants' being in possession was made before the referees.

It is further objected, on the part of the defence, that the case shows an adverse possession of the disputed land by one of the defendants, or both, at the time of the execution of some of the deeds in the plaintiff's title, and that such deeds are, therefore, void. The case does show such an adverse possession as avoids some of the deeds in the plaintiff's chain of title, under the statute. But this is not a question submitted to the court by the referee, nor does the referee state that he intended to decide it according to law. A deed void under the statute, for this cause, is good between the parties to it; and the grantee would have a right to recover against a stranger in an action in the name of his grantor. Such a deed is good in equity. It does not appear but that the referee intended to decide according to equity, as he had a right to. It has been too long settled in this state to require a reference to authorities, that when a referee does not state that he intended to decide according to law, and does not refer the question of law to the court, the court will not

reverse his decision, unless it is apparent that he has violated some principle of right, whereby injustice is done. We see no such injustice in the conclusions of the referee in reference to this question, (even if the question was raised before him), as requires us to give the defendants the benefit of this technical objection to defeat the suit.

The judgment of the county court is affirmed.