HON. TIMOTHY P. REDFIELD, ⎫
HON. RUSSELL S. TAFT, ⎬ ASSISTANT JUDGES.
HON. JOHN W. ROWELL, ⎭

---

### J. B. & L. J. NEEDHAM *v.* G. R. HOLT.

*Report of Referee. Presumption of Fact from Fact. Agent. Parties.*

The question being whether the defendant purchased the lumber of the plaintiffs or of another party, and the case having been referred to a referee, who failed to report which of the two sold it to the defendant, but found for the plaintiff to recover, *Held*,

1. The County Court would have been justified in recommitting the report to the referee to find which of the two parties made the sale.
2. But when a *pro forma* judgment is rendered in the court below, the Supreme Court will dispose of the case upon the facts stated in the report, and such *inferences* as the County Court *ought to have deduced from them*.
3. In such a case there is no presumption that the court inferred facts sufficient in law to sustain its judgment, from the insufficient facts found by the referee.
4. Suits are sometimes maintained by, and in the name of the party in interest, when the contract was made by another; but not, if the defendant would be deprived of any right he would otherwise have in making his defence.

5. When the reference is general, if it is apparent that the referee intended to follow the law, and has erred, the report will be set aside.
6. The rule applied, that if an injury is to result to one from the omissions or neglect of another's agent, the principal must be held liable.

CASE heard at the September Term, 1881, VEAZEY, J., presiding, on the report of a referee. The court rendered judgment, *pro forma*, for the plaintiff to recover $974.96. The referee found, among other things :

. . . . That as early as December, 1876, one Cyrus Butler, who was himself engaged in manufacturing spool stock, wrote to the defendant that the plaintiffs were desirous of selling their spool stock through him, Butler, which they were getting out that winter ; that he, Butler, " should probably take an option upon the same," and requested the defendant to say to the plaintiffs, if they should apply to him to sell their spool stock, that he, the defendant, had arranged with him, Butler, for a supply.

The defendant had, on the 18th day of November, 1876, given said Butler an order for 600,000 feet of spool stock at $24 per thousand, delivered on dock at Ticonderoga, N. Y., between May and October, 1877.

Some time during the winter it was finally agreed between the plaintiffs and said Butler, that if the defendant, Holt, would take their (the plaintiffs') spool stock as part of 600,000 feet, ordered by him as aforesaid from Butler, and would inspect the same before it left the plaintiffs' premises at Hague, N. Y., that the plaintiffs would pay him, Butler, a commission of five per cent. for selling it. It was understood between the plaintiffs and said Butler, that Holt (and not Butler) was buying the lumber ; but on the other hand Holt understood he was buying it of Butler.

In the spring after the lumber was sawed, Holt, in response to a letter written him by Butler, requesting him to go to Hague and inspect Needham's lumber, went to the plaintiffs' mill at Hague and looked at the lumber, pulling out pieces here and there from the piles. The plaintiffs understood that the defendant inspected it and agreed to accept it when delivered at Corsey's dock, on Ticonderoga Creek, and then purchased the lumber of them.

The defendant did not so understand it. He supposed he was examining the lumber to determine about how much there was of it, and get a general idea of its quality. It was piled in large piles, and could not be inspected with any accuracy without tearing down the piles, and examining it more thoroughly

than was done by the defendant. The defendant told the plaintiff that he would take all the lumber shown him at said dock, and it was to be delivered there before the 1st day of October following.

The defendant the winter before gave one Hooper, the agent of Butler, a list of the sizes of the lumber he desired, the birch sawed into that he had ordered as aforesaid of Butler, but there was no one inch lumber on such list. Holt understood that the plaintiffs' lumber conformed to his directions as to sizes.

. . . . . . .

The plaintiff delivered said lumber at Corsey's dock by the 1st of September, 1877 ; and it was all taken away by one Capt. Kirby, in his boat, by defendant's direction, and taken to defendant's dock at Burlington, except from 8,000 to 12,000 feet delivered at the dock after Kirby left with his last boat load.

. . , . . . . .

The defendant, as each boat load of lumber was received and inspected by him at Burlington, gave Butler notice by mail of his claims in regard to the lumber, and that he could not receive the poor or cull lumber, and the one inch lumber.

On the 14th day of August, 1877, after the greater part of said lumber had been delivered to said Holt at said dock and taken away by him, Butler wrote Holt as follows :

"I have arranged with the Messrs. Needhams, they being in great need of money, whereby you and they may make settlement together direct for all the birch spool stock gotten out and delivered to you."

Which letter or order was signed by Butler, and taken by one of the plaintiffs, to the defendant, on the 3d day of September, 1877, after the lumber had arrived at defendant's dock, whereupon Holt received and retained said order and gave the plaintiffs three notes for $1,000 each, in part payment for said spool stock, and agreed with said L. J. Needham to pay the plaintiffs the balance due for said lumber, when it was all inspected and measured, a small part of same not having been inspected or measured by said Holt, after its arrival in Burlington.

At the time of giving said notes as aforesaid, the defendant took a receipt signed by L. J. Needham with the firm name of J. B. & L. J. Needham, which receipt was as follows :

" Received, Burlington, Vt., September 3d, 1877, three notes . . . in all $3,000, on account of lumber from Cyrus Butler, as per his order August 14th, 1877,"

which receipt was written by Holt. Holt also credited Butler with this lumber upon his books, and kept no separate account with the plaintiffs that year, but it did not appear that the plain-

tiffs or either of them saw the account, or knew to whom the same was credited.

Upon the plaintiffs' books the same lumber was charged to the defendant, and not to Butler, as they understood Holt was buying the lumber through Butler of them.

On the 10th day of August, prior to giving said order to Holt to settle directly with Needhams as aforesaid, Butler wrote Holt to send him to Ticonderoga a note for $1,000 on account, as Needhams would be there for funds. Holt sent the note to Butler the 14th of August, and on the 17th, when received, Butler returned it to the defendant by mail, stating in the letter in which it was enclosed, that since writing him for the note, he had arranged that the Needhams and Holt should settle, and as the Needhams might want the notes in different amounts, he returned the $1,000 note received by him cancelled. . . . .

And if the court find that the lumber was not accepted when taken or received by defendant's boatman, Capt. Kirby, at said Corsey's dock—and that this inferior lumber and one inch lumber should be thrown out or excluded from the computation, I then find that there should be credited to said defendant therefor $207.68 for inferior lumber thrown out, and $55.68 for one inch lumber not ordered of said Butler as aforesaid, or used.

The defendant credited Butler for the plaintiffs' lumber with only 138,457 feet; and by making or charging large reclamations upon the lumber furnished by Butler himself that year, and after crediting Butler with plaintiffs' lumber at $3,322.96, and charged the notes and the $207.68 for poor lumber, the defendant had a balance at the end of the year against Butler of $319.59, which was carried to account of Holt and Barnes, and charged to Butler the next year ; but Butler protested against such reclamations and charges, and repudiated them, and it did not appear that the matter had ever been settled or adjusted between said Butler and the defendant.

I find from the foregoing facts that the plaintiffs are entitled to recover the balance due for the lumber furnished by them to the defendant in 1877, viz : 154,000 feet at $24 per thousand, after applying the proceeds of the three notes of $1,000 each, which was discounted at Howard National Bank, and belonged to defendant to pay discounts, as charged in plaintiffs' account.

*T. E. Wales* and *W. L. Burnap* for defendant.

We submit that the relation of debtor and creditor as to the Needham lot of lumber, did not exist between Holt and the Need-

hams. Hence no privity of contract or right of action can exist between the parties to this suit, unless it be clearly established that the *original contract* was extinguished.

In other words, the plaintiffs must make out a *novation* of this contract ; no novation can exist unless it be based upon the extinguishment of Butler's liability under the original contract. *Butterfield* v. *Hartshorn*, 7 N. H. 345 ; *Heaton* v. *Angier*, Ib. 397 ; *Wharton* v. *Walker*, 4 B. & C. 163 ; 2 Chit. Con. (11th ed.) 1376, *et seq. ; Chaffee* v. *R. R. Co.*, 53 Vt.

It is a cardinal principle that the legal interest in a contract, and the right to enforce it, reside alone in the party from whom the consideration moves. All the cases upon this subject recognize this principle.

The receipt of the lumber at Ti. dock by the carrier, even though appointed by the defendant, does not constitute an acceptance. The buyer is not precluded from objecting merely by receiving goods ; for receipt is one thing and acceptance another. Benjamin on Sales, s. 140, and cases cited ; *Johnson* v. *Cutler*, 105 Mass. 447 ; *Frostburg Mining Co.* v. *N. E. Glass Co.*, 9 Cush. 115.

*W. H. Smith*, for the plaintiff.

At the best the defendant must have known that Butler could be only an agent of the plaintiffs as to this lumber, and he was bound to know the extent of the agent's authority.

In its conclusions the report finds this was a sale by plaintiffs to defendant, and submits to the court only questions growing out of such sale ; that is, the defendants' liability for such lumber in the lot as the defendant did not want.

Here is no pretence of a warranty or fraud on the part of the plaintiffs. All was *sold ;* all was delivered according to contract ; all was taken away by the directions and agent of the defendant.

The contract for " *all* the lumber " was ratified and confirmed by the defendant by his *acceptance* of it at Corsey's dock and its removal to Burlington. He could at Corsey's dock see the size and quality of each stick.

It is no answer to plaintiffs' claims here that a portion of the lumber is at the defendant's, taken there by the defendant. 1 Parsons, 593.

The sale being entire, the taking of all was an acceptance of all. *Carpenter* v. *Brainard*, 37 Vt. 145, and cases cited ; *Blish* v. *Granger*, 6 Vt. 340 ; *Carpenter* v. *Dole*, 13 Vt. 578 ; (Auditor found a *sale* as in this case ;) *Cole* v. *Transp. Co.*, 26 Vt. 87 ; *Cram* v. *Watson*, 28 Vt. 22.

The opinion of the court was delivered by

TAFT, J. This is an action to recover the value of 154,000 feet of birch lumber, which the plaintiffs claim they sold the defendant. The defendant insists that he bought it of Cyrus Butler, and the question at issue is, of whom was the lumber purchased, the plaintiffs, or Butler ? The case was heard by a referee who has reported the facts in relation to the sale and delivery of the lumber to the defendant. He does not find whether the purchase of the lumber was made of the plaintiffs, or of Butler ; but after stating the facts, finds from them " that the plaintiffs are entitled to recover." From the construction of the report, this is evidently nothing but a conclusion of law as to the legal liability of · the defendant, from the facts found and expressly stated in the report. The County Court would have been justified in rejecting the report, or recommitting it, with directions to the referee to find whether the sale was made by the plaintiffs, or Butler. Neither party asked to have the report recommitted ; the presiding judge was disqualified ; and judgment was rendered *pro forma*. We shall dispose of the case upon the facts stated in the report, and such inferences as the County Court ought to have deduced from them.

We do not think that because the referee found the defendant liable, that he inferred all the requisite facts to make him liable, when the report is silent as to such inferences. The liability of the defendant depends upon the facts found and reported by the referee, and not upon facts which, in order to sustain the conclusion of the referee, we must presume he inferred from facts expressly found by him. He may not, in fact, have made such

inferences, and still, mistaking the law, held the defendant liable upon the facts expressly found. But the construction we give to the report in this case is, that no such inferences were made by the referee, and that his finding as to the liability of the defendant was a conclusion of law upon the facts expressly stated. But if the finding can be construed as an inference of fact from the facts expressly found and reported, we think the referee erred in inferring that the lumber was sold by the plaintiffs to the defendant. " Where the fact found by an auditor is merely an inference, or a fact which the law would infer from other facts found and stated by him, and he has made a mistake in the law, as applicable to the facts stated by him, and so erroneously inferred a fact to exist, the County Court may disregard his finding and make such an inference as the law would warrant from the facts stated, and render judgment acccordingly." *Briggs* v. *Briggs' Estate*, 46 Vt. 571.

What judgment, then, should the court below have rendered upon the facts as reported ?

This court presumes in certain cases that the County Court inferred the existence of a certain fact or facts from facts found by the referee, when their existence is necessary to sustain the judgment which they have rendered, and when such inferred facts are not expressly found. Whether this rule applies to judgments rendered *pro forma, quaere ;* we are inclined to think it does not, but that in such cases, no presumptions are made by this court, that the County Court made any inferences of fact from the facts reported ; the judgment is formal, and made merely for the purpose of bringing the case into this court. But in cases where the rule does apply, we think the law is settled and well stated by PIERPOINT, Ch. J., in *Pratt* v. *Page*, 32 Vt. 13 ; viz., " When the court below is silent on the subject (of such inferences) and only sends up its decision, accompanied by the report on which it was based, this court will only presume, in aid of its judgment, that it inferred such facts from the report, as on an examination of it, it can see that the County Court ought to have inferred. It is not sufficient that the facts reported may have *some* tendency to establish the required fact, for in that event, it would be idle to

bring cases of this kind here, for we apprehend that but few cases arise in which there cannot be something found in the report tending to sustain the decision below ;" and further, " The Supreme Court will only presume the County Court to have done that which, in this respect, upon an examination of the facts reported, it is apparent they ought fairly to have done. In all cases of this kind it is to be borne in mind, that the Supreme Court has before it all that the County Court had on which to base their decisions. And we think there is far less danger in adhering to the facts as found, and the fair and legitimate conclusions arising from them, as they are certified to us by the County Court, as the basis of our decision than to *presume* that the County Court have *inferred* the existence of other facts, not fairly to be presumed from the facts found, and of the existence of which that court has not seen fit to inform us." And see *Corliss* v. *Putnam*, 37 Vt. 119. And it has been held that " the County Court cannot, upon the report of referees, infer. facts from other facts reported, as they may sometimes do upon the report of auditors." *Kimball* v. *Baxter*, 27 Vt. 628.

The right of the plaintiffs to recover depends upon whether the defendant purchased the lumber of the plaintiffs, or of Butler. We think the facts reported show conclusively that the purchase was made of Butler, and not of the plaintiffs. The defendant bought of Butler in November, 1876, six hundred thousand feet of lumber, and this fact was known to the plaintiffs, and they agreed with Butler that if the defendant would take the lumber for which they are now seeking to recover, as a part of the six hundred thousand feet, they would furnish it, the defendant to inspect it before it left their premises at Hague, N. Y., and would allow him, Butler, a commission of five per cent. for selling, and the lumber was delivered as a part of the six hundred thousand feet, to the defendant.

The plaintiffs supposed they were selling their lumber to the defendant, and he supposed he was buying it of Butler. It does not appear that Butler ever informed the defendant of the condition upon which the plaintiffs told Butler they would sell it, or

gave him any information that would lead him to suppose that he was buying the lumber of the plaintiffs.

The defendant supposed he was buying the lumber of Butler, and the conduct of the plaintiffs would tend to strengthen such supposition, as they took an order from Butler to the defendant in August, 1877, for part payment of it, and gave the defendant a receipt for three thousand dollars on account " of lumber from Cyrus Butler as per his order," acts inconsistent with the belief on their part, that they were selling the lumber to the defendant.

There is nothing in the report which *tends* to show, that any contract for the sale of the plaintiffs' lumber, was ever made between them and the defendant, save the delivery of the lumber; and the presumption arising from such delivery is counteracted by the further fact, expressly found, that by the consent of the plaintiffs it was delivered as a part of the 600,000 feet sold by Butler to the defendant. There is nothing, then, in the report to warrant us in presuming that the court below inferred the fact that there was a sale of the lumber from the plaintiffs to the defendant, which fact must have existed to entitle the plaintiffs to a judgment.

We are aware that suits are sometimes maintained by, and in the name of, the party really in interest when the contract was made by another party, and the defendant supposed that he was dealing with the latter, as in the case of *Smith* v. *Foster*, 36 Vt. 705. But as was said in that case, it may be done if by so doing he, the plaintiff, " deprives the defendant of no right he would otherwise have in his defence." It would be manifestly unjust to allow the plaintiffs to recover, after they had permitted the defendant to deal with Butler as principal, and in good faith to pay him the amount due. Although it does not appear that the defendant has paid Butler, such is his claim, and to entitle the plaintiffs to recover under the rule referred to, and conceding that this case should be governed by it, we think it incumbent upon them to show that the defendant had not paid Butler, and so " been deprived of no right he would otherwise have in his defence."

The papers in the case, do not show whether it was referred generally, or to be heard and decided according to law. If it

was a general reference, it is apparent from the report that the referee intended to follow the law, and that he erred in so doing ; and under such circumstances, the rule stated by PRENTISS, Ch. J., applies ; viz., " If the referee state all the circumstances of the case, and it appear, that he has decided contrary to law, the report, if it appear, that he meant to follow the law, will be set aside." *Johns* v. *Stevens et al.*, 3 Vt. 308 ; and in a later case by PECK, J. : " When a referee does not state that he intended to decide according to law, and does not refer the question of law to the court, the court will not reverse his decision, unless it is apparent that he has violated some principle of right, whereby injustice is done." *Park* v. *Pratt et al.*, 38 Vt. 545.

Butler had authority from the plaintiffs to make sale and delivery of their lumber, under his contract with the defendant, but in such sale and delivery did not follow the directions given him. If either party is to suffer in consequence of his acts and neglect in that respect, it should not be the defendant, but rather the plaintiffs who employed him. *Barber* v. *Britton et al.*, 26 Vt. 112. This disposition of the case renders it unnecessary to pass upon the legal questions which would have arisen had the sale been made by the plaintiffs.

Judgment of the County Court is reversed, and judgment for the defendant.