ELMER ABBEY v. ROBERT McPHERSON.

1. SURVEY—*Repugnant Calls—Varying Descriptive Courses.* In construing a conveyance of real estate containing repugnant calls, for the purpose of determining the location of the land granted, the descriptive courses will be varied to make them conform to the monuments fixed by the terms of the conveyance as boundary or locative calls.

2. MONUMENT OF DESCRIPTION, *Example of.* Where the southern boundary of land conveyed is described in the instrument of conveyance as beginning at a certain point therein named and running "thence east to the southwest corner of the land of C. on said quarter-section," the southwest corner of the land of C. becomes a monument of description, and, if its location is definitely ascertained, the southern boundary of the land conveyed would be indicated by a straight line running from the point named to

the southwest corner of the land of C., notwithstanding the line would run in a southeasterly direction, and the quantity of land conveyed would be about 35 acres instead of "30 acres, more or less," as given in the instrument of conveyance.

MEMORANDUM.—Error from Doniphan district court; R. C. BASSETT, judge. Action in ejectment by Robert McPherson against Elmer Abbey. Judgment for plaintiff. Defendant brings the case here. Affirmed. The material facts are stated in the opinion, filed September 18, 1895.

*Albert Perry*, and *F. H. Drenning*, for plaintiff in error.

*S. L. Ryan*, and *W. I. Stuart*, for defendant in error.

The opinion of the court was delivered by

CLARK, J. : The record in this case discloses that one Nelson Abbey formerly owned all of the northwest quarter of section 35, township 3, range 22, in Doniphan county ; that in March, 1859, he conveyed to one James Abbey 10 acres off the west side of the northwest quarter of said quarter-section, the same being a strip of land 20 rods wide, east and west, and 80 rods long, north and south ; that on December 12, 1873, he conveyed to Henry Hughes a tract of land adjoining the tract last described, bounded as follows : "Beginning at the northeast corner of the James Abbey tract, running thence east 20 rods, thence south 80 rods, thence west 20 rods, thence north 80 rods to the place of beginning, containing 10 acres, more or less." On January 4, 1871, he conveyed to Michael Conley part of said quarter-section, containing 20 acres, bounded as follows : "Beginning at the northeast corner of said quarter-section, running thence west 40 rods, thence south 80 rods, thence east

40 rods, thence north 80 rods to the place of begin-
ning.'' On September 7, 1871, he conveyed to the
said Michael Conley an ''L'' shaped tract of the
same quarter-section, bounded as follows: ''Begin-
ning 40 rods west of the northeast corner of said
quarter-section, running west 20 rods, thence south
106⅔ rods, thence east 60 rods, thence north 26⅔ rods,
thence west 40 rods, thence north 80 rods to the place
of beginning.'' Nelson Abbey died testate, and his
will was duly admitted to probate on the 3d day of
July, 1875, and his widow duly elected to take under
the will. By the terms of his will, his executors were
empowered and directed to sell and convey a portion
of said quarter-section, and to pay the proceeds of
such sale to his wife, Emeline Abbey. The land so
ordered sold was described in the will as follows:

''Beginning at the north line of said quarter-sec-
tion, at the northeast corner of the land of Henry
Hughes in said quarter-section of land, running
thence south to the southeast corner of the land be-
longing to said Hughes, thence east to the southwest
corner of the land of Michael Conley on said quarter-
section, thence north with said Conley's land to the
north line of said quarter-section of land, thence west
on the said line to the place of beginning.''

He devised to his wife a life estate in all the re-
mainder of his property, both real and personal, mak-
ing his son, Volney Abbey, his sole residuary legatee.
At his death Nelson Abbey owned all of the northeast
quarter of said section 35, except the portions which
he had conveyed to James Abbey, Michael Conley,
and Henry Hughes, as above described. Emeline
Abbey died testate, and on December 11, 1883, Alvin
Healy duly qualified as administrator of her estate,
and under an order of the probate court he sold to
the defendant in error, for the sum of $390 cash, after

it had been duly appraised at $12 per acre, the real estate which the executors of Nelson Abbey were, under said will, empowered and directed to sell for the benefit of Emeline Abbey, describing the same as set out in said will. On March 25, 1885, for a consideration of $100, Volney Abbey conveyed to the plaintiff in error by deed a part of the said quarter-section under the following description :

"Beginning at the southeast corner of said quarter-section of land, running thence 160 rods west, thence 80 rods north, thence east 100 rods, thence south 26⅔ rods, thence east 60 rods, thence south 53⅓ rods to the place of beginning, containing 70 acres, more or less."

On July 23, 1889, the defendant in error brought suit in ejectment against Elmer Abbey, the plaintiff in error, to obtain possession of a triangular tract of land located near the center of this quarter-section, containing about five acres, which may be more particularly described as follows : Beginning at a point 80 rods south of the north line and 40 rods east of the west line of said quarter-section (being at the southeast corner of the land conveyed to Henry Hughes), running thence east 60 rods (to the west line of the Conley land), thence south 26⅔ rods (to the southwest corner of the Conley land), thence in a northwesterly direction to the place of beginning.

The question raised is as to the interpretation of the particular language used in the will by Nelson Abbey, and which was followed in the description given in the administrator's deed under which the defendant in error claims title. As will be observed, there are repugnant calls in the will and the administrator's deed. There is no contention as to the location of the southeast corner of the Hughes land. The

next call in the description given in the will and administrator's deed is, "thence east to the southwest corner of the land of Michael Conley on said quarter-section of land." The southwest corner of Conley's land is, as a matter of fact, 26⅔ rods south of a point directly east of the southeast corner of the Hughes land, and in order properly to locate the southern boundary of the land devised to the widow, either the direction or the point of location given in this call must be rejected. The testator had, as before stated, at one time owned all the quarter-section, but had at various times sold and conveyed certain portions thereof, all of which were described in the deeds by metes and bounds, and it is presumed that he knew the location and lines of the different tracts conveyed by him prior to the execution of his will.

There is nothing in the findings of fact to indicate whether the land of Michael Conley had been surveyed or fenced, or whether any artificial monuments had been placed at the southwest corner thereof, but the exact location of the southwest corner of his land was easy of ascertainment. It is contended by the plaintiff in error that the testator had in mind the southwest corner of the tract first conveyed to Conley, which was directly east of the southeast corner of the Hughes land, but that he overlooked the fact that this corner was east of the west line of the last tract conveyed to Conley; that such an error would more likely occur than that he intentionally ran the line in a southeasterly direction. While the defendant in error claims that, as the corners of the several tracts previously conveyed were fixed by distance from each given point, it must be presumed that the testator was perfectly acquainted with the location of this corner and had it mind in describing

the tract devised to Emeline Abbey, and that it must be presumed that the error in the description was made either by omitting the word *south* as qualifying the word *east*, or that the word *east* was inadvertently inserted in the description, and that it was intended that the line should run from the southeast corner of the Hughes land to the southwest corner of the Conley land, in which case it would be presumed that a straight line was intended between those two points.

The general rule is that, in the construction of conveyances of real estate, both course and quantity must give way to natural or artificial monuments or objects, and courses must be varied so as to conform to the natural or ascertained objects or bounds called for by the conveyance; and this is true, notwithstanding the quantity of the land included in the description may be either greater or less than that named in the instrument of conveyance; and before course, distance or quantity is permitted to determine the boundaries of land where there are repugnant calls, every means of fixing the location of the monuments must be resorted to. The southwest corner of Conley's land being certain, definite and fixed, that corner will control over the course and quantity indicated in the will and deed. That where land is described by another's land, the latter becomes a monument of description, and the true line thereof will control the courses and quantity given in the deed, see Tiedeman on Real Property, § 839; *Park v. Pratt*, 38 Vt. 552; *Colton v. Seavey*, 22 Cal. 497; *Howe v. Bass*, 2 Mass. 380; *Baily v. White*, 41 N. H. 337; *Pernam v. Wead*, 6 Mass. 131; *Wendell v. Jackson*, 8 Wend. 183; 3 Washburn on Real Property, (5th ed.). p. 428; *Edson v. Knox*, 36 Pac. Rep. (Wash.) 698; *Haynes v. Young*, 36 Me. 557;

*Sayers v. City of Lyons*, 10 Withrow, (Iowa) 249.    In the latter case it was held that—

"In the construction of a grant for the purpose of determining the location of the land granted, courses and distances will be varied when necessary to make them conform to natural or artificial monuments or objects fixed by the terms of the grant as boundary or locative calls.    When one call of a grant was the corner of a lot in an incorporated town, and another the low-water line of a navigable stream, it was held that both must be adhered to in determining the location of the land granted, even when they do not correspond with the courses, distances and quantity named in the description."

In *Pernam v. Wead*, supra, it is held that where the boundaries of land as mentioned in a conveyance are fixed, known and unquestionable monuments, although neither the courses nor distances nor the computed contents as described in the conveyance correspond therewith, the monuments will govern.    In that case, the boundaries of two sides were described as the lands of other individuals named in the deed.    The court held that the boundary-lines of those lands were fixed monuments.    In this case, the court below held that the proper construction to give to the clause in the will and deed under consideration is, that the south line of the real estate devised to the widow was intended to run from the southeast corner of the Hughes land in a southeasterly direction to the southwest corner of the Conley land, so as to include the triangular tract, which is the subject of this controversy, and rendered judgment in favor of the defendant in error ; and this court is of the opinion that the construction so placed upon said instrument is the correct one.

The judgment of the court below is affirmed.

All the Judges concurring.