# WASHINGTON COUNTY.

## March Term, 1843.

*Present*, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE, ⎱
" ISAAC F. REDFIELD, ⎰ *Assistant Justices.*
" MILO L. BENNETT. 

---

### Joseph A. Wing *v.* Ozro Hurlburt.

A husband is not liable to an attorney for professional services rendered his wife, in defending against a petition for divorce, preferred by him, or in procuring a bill of divorce, on her petition.

Goods, or services furnished, or rendered, after the commencement of a suit, become a part of the account; and the party furnishing or rendering, is not obliged, while the suit is pending, to receive pay for a single charge.

Where a party intends to rely on a tender, he cannot make it on a trial before an auditor, and leave the money in his hands, but must bring it into court.

This was an action of book account, in which there was a judgment to account, and reference to an auditor.

The auditor reported that, to the first three items of the plaintiff's account, amounting to 88 cents, there was no objection by the defendant; that the fourth charge of $1.83 accrued after the commencement of the suit, and that, at the trial before him, the said sum was tendered by the defendant to the plaintiff, which remained in his, the auditor's, hands; that the subsequent items of the account, from No. 5 to No. 29, inclusive, were for professional services rendered, and money paid out for, and at the request of, one Mary S. Hurlburt, then wife of the defendant, in defending for her, against a petition for divorce commenced against her by the defendant; and that the remaining items of the account were for like services, and disbursements at the request of said Mary S., in the prosecution of a petition for a divorce for the cause of intolerable severity, in her favor, against the defendant, made returnable at the same term of the court as

WASHINGTON, the said petition of the defendant against the said Mary S.
And the auditor reported that both of said petitions were tried by the court, together ; that the petition of the said Ozro Hurlburt was dismissed, and that, by the consent of the said Ozro, a divorce was granted on the petition of said Mary S., and she was allowed alimony to the amount of $250.

The auditor, thereupon, submitted to the court, whether the defendant was liable to the plaintiff for said professional services and disbursements, and reported that, if the court should be of opinion that he was liable, he found due to the plaintiff the sum of $99.50 ; but if the court should be of opinion that the defendant was not thus liable, he found due the plaintiff the sum of $2.71.

Upon this report, the court rendered judgment for the plaintiff, for the whole of his account ; to which decision the defendant excepted.

*J. A. Vail* and *W. K. Upham,* for defendants.

I. As to the first item of the plaintiff's account, objected to by defendant, (item No. 4) we say, although it was necessary for the auditor, by statute, and by the decision of the case of *Martin* v. *Fairbanks,* 7 Vt. R. 97, to audit all the accounts of the parties "to the time of making up the report," yet, this charge having accrued subsequently to the commencement of this suit, it was competent for the defendant to pay it, and the tender of this amount by the defendant to the plaintiff, at the hearing before the auditor, will avail him and amount to a payment ; if not, the consequence is, there can be no dealings whatever between persons who have an action of book account pending.

II. As to the items of plaintiff's account which accrued in defending the bill of divorce instituted by defendant against his wife. From the facts found by the auditor, we contend, that the defendant is not legally liable to pay this part of the account. It is not a contract for *necessaries,* within the meaning of that term, as applied to the legal liability which results from the relation of husband and wife. The husband is bound by all contracts of the wife, for *necessaries,* made during coverture. This rule, with some exceptions, not necessary to refer to, contains the whole liability of the husband ; and this, according to Mr. Reeves,

in his Domestic Relations, " rests wholly on the ground of its being a duty in him to provide *necessaries* for his wife, which the law will enforce." Ch. Kent says, " the husband is bound to provide his wife with *necessaries* suitable to her situation and his condition in life, &c., but for any thing beyond *necessaries* he is not chargeable." Blackstone lays down the same principle in almost the same language. Were the professional services of the plaintiff *necessaries*, within the true meaning of that term, as understood in the law, and used by these eminent jurists? By reference to the earlier forms of pleadings and authorities, we find this term defined. *Whittingham* v. *Hill*, 2 Croke's R. (Jac. 1) 494, and authorities there cited; *Shepard* v. *Mackoul*, 3 Camp. 327, note. By *necessaries* we understand food, drink, clothing, &c., for the support and sustenance of life. The case of *Shepard* v. *Mackoul*, above cited, can afford the plaintiff's action no support, for, in that case, the professional services of the attorney were, in the first instance, necessary for her personal safety, and were required for her " preservation and safety;" and Lord Ellenborough expressly says, " that the defendant's liability depended upon the necessity of exhibiting articles of the peace against him." And with respect to the other part of the case, he says, " the defendant knew and approved of the business his wife carried on, and was aware of the prosecution, without expressing any dissent to the plaintiff's defending her. I think a promise may fairly be inferred, on the part of the defendant, to pay the plaintiff for his labor in conducting the defence." It will be seen by an examination of this case and other cases of like character, and also by the examination of that class of cases where the husband has deserted his wife or causelessly turned her away, and has been held liable for necessaries, that, in the first case, the professional services rendered for the wife, were necessary to protect her from actual violence, and, in the latter, the articles furnished were necessary for her subsistence and support. How can this court determine whether it was *necessary* for the wife to defend the bill of divorce instituted against her by the husband? Suppose all the charges in the bill were true, will this court sit and determine whether the bill ought to have been granted? And can it make any difference with the the defendant's liability whether

WASHINGTON, the prayer of the bill was granted, or whether the bill was
*March,*
*1843.*    dismissed? If this court sustain the decision of the court
———    below, they extend the liability of the husband indefinitely;
Wing
*v.*    but the adoption of the old rule, making the husband liable
Hurlburt.    only "*pro necessariis victu et apparatu,*" will reduce that
liability to legal certainty and keep it within known bounds.

III. As to that part of the plaintiff's account which
accrued in the commencement and prosecution of the libel
for divorce brought by Mary S. Hurlburt against the defend-
ant. If the court should interpose and protect the wife from
the bill of the husband, and compel the husband to pay the
expenses of its defence, they certainly will not place in her
hands a sword and compel the husband to pay for her means
of attack. There may be some apology for the court in
sustaining the first part of the case, but we think they never
can make the husband liable for this part of the plaintiff's
account. And the fact that the divorce was granted on the
bill of the wife, can make no difference.

The supreme court allowed Mary S. Hurlburt $250, as
alimony — more than sufficient to pay all the expenses of
both bills.

The cases cited by the plaintiff, from the English ecclesi-
astical reports, can have no authority in a court of common
law jurisdiction.

*J. A. Wing, pro se.*

I. Is the husband bound to pay the attorney for his ser-
vices on the retainer of the wife, in a case brought by the
wife against the husband for a divorce, on the ground of
*intolerable severity,* where a bill is granted for that cause?

The granting of the bill is conclusive evidence that the
husband was guilty of intolerable severity, and that his wife
had just cause to appeal to the laws for protection. If the
husband, by his cruel conduct, compels the wife to seek pro-
tection from him, by an appeal to the laws, will this court
deprive her of the means of appealing effectually?

In matters of divorce, this court sit as a court of law, de-
riving all their powers from the statute, and are not governed
by the rules of the English ecclesiastical courts. *Harrington*
v. *Harrington,* 10 Vt. R. 505. This court has no power to
grant temporary alimony. Ibid. The statute gives this court

no power to award costs to either party in cases of divorce. WASHINGTON, It only gives power to grant alimony after the granting of $\quad$ March, 1843. the bill.   This has no reference to the expense of procuring the bill.   The legislature has left this as it was by the com-  $\quad$ Wing mon law.   If the husband abuses his wife, how shall she be  $\quad$ Hurlburt. protected ?   Can she employ counsel to assist her ?   And if so, who is liable to pay for the service ?   It is clear that the wife cannot bind herself.   The husband, by his conduct, gives her a credit, which she has a right to use for her pro- tection.   The husband is bound to pay for all necessaries provided the wife, when, by his intolerable severity, he drives her from his home.   He is bound also to pay for legal assistance which may thus be rendered necessary.   Clancy, on the Rights of Women, p. 52, says :  " Legal assistance ' may, also, be, in some instances, necessaries which, if sup- ' plied for the wife, the husband must pay for, as when he ' turned his wife out of doors, without just cause, with cir- ' cumstances of great violence, and she exhibited articles of ' peace against him, the attorney, who preferred the articles, ' brought an action against the husband for the business done ' on the retainer of the wife, and had a verdict.   *Shepherd* ' v. *Mackoul*, 3 Camp. 326. Lord Ellenborough observed in ' this case, speaking of the articles of peace, that if that pro- ' ceeding was uncalled for, his wife certainly could not make ' him liable for the expense thereby incurred ; but if she was ' turned out of doors in the manner stated, she carried along ' with her a credit for whatever her protection or safety re- ' quired.   She had a right to appeal to the law for protec- ' tion, and she must have the means of appealing effectually. ' She might, therefore, charge her husband for the necessary ' expenses of the proceeding, as much as for necessary food ' and raiment.   In like manner, in *Williams* v. *Fowler*, ' 1 McClelland & Y. 269, where the defendant had driven ' his wife from his house by his cruelty towards her, and pro- ' ceedings at her suit, at law or in equity, arising from his ' misconduct, were instituted against him by the plaintiff, an ' attorney, it was held that the husband was liable to the ' amount of the plaintiff's bills of cost incurred in those pro- ' ceedings.   The cases, therefore, turn on this construction, ' which is common to both, that the *proceedings* were ren- ' dered necessary by the defendants' own conduct towards

'their wives; and the question for the jury in all such cases 'must be, whether the treatment of the wife by her husband 'was so bad as to render her recourse to legal protection 'necessary."

In England all questions in relation to divorce are tried in the ecclesiastical courts, and by reference to the decisions in those courts we shall find that the husband is bound to pay the wife's cost. The case of *Harris* v. *Harris*, 3 Eccl. R. 153, was a petition by the wife for divorce, on the ground of adultery of the husband. The court say that the husband is bound to pay the cost, on both sides. Also, in the case of *D'Aguilar* v. *D'Aguilar*, 3 do. 329, the court say : " In general, the wife would be disarmed and denied justice." This was, also, a petition by the wife for a divorce from her husband. This court, also, as a general rule, grant the wife alimony, *pendante lite.*

The rule that requires the husband to pay the cost when the wife had cause of complaint against him, is founded on the plainest principles of reason and common sense. If the husband's conduct towards his wife is so cruel that she is compelled to have recourse to the law for protection, she must, (in the language of Lord Ellenborough,) have the means of appealing effectually. And as, in the case of *Williams* v. *Fowler*, where the defendant's conduct compelled the wife to institute proceedings at law, and in equity, against the husband, they held him liable, on the ground that the proceedings became necessary from the defendant's own conduct towards the wife; and the question for the jury, in all cases, must be, whether the treatment of the wife by the husband was so bad, as to render her having recourse to legal protection necessary.

In the case at bar, were the proceedings at law necessary? The supreme court have said they were, and granted a bill of divorce from the defendant for his intolerable severity towards his wife. After the decision of the court, it is too late to say the proceedings were uncalled for. We insist, then, that the husband is bound to pay the expense.

The granting of alimony can make no difference in the case. All the liabilities had accrued against the defendant prior to the decree, and could not be changed by the decision as to alimony. Suppose a man should so abuse his wife

WASHINGTON,
*March*,
1843.

Wing
*v.*
Hurlburt.

that she could not live with him, and the court grant her a bill, but give her no alimony. How is the attorney to get his pay for his services, &c.? The wife cannot bind herself. She may have no friend that will aid her, and she must submit to his abuse for the term of her life, or this court must say that when she has just cause of complaint for the abuse of her husband, she must have the means of complaining effectually.

II. Is the husband bound to pay the expenses of the wife in defending against a petition for divorce, brought by the husband against her, when he has no cause of complaint, and his petition is dismissed? It is necessary she should be defended; especially if the charges are false; and if the husband will not furnish her with money for her defence, if she employ an attorney to defend her, he may recover the same of the husband. The legal assistance is as much necessaries, as food and raiment.

The wife's situation is truly deplorable, if the husband is not bound to pay the expenses, if he fail in a suit for divorce against her. She cannot bind herself or make herself liable for the expenses of defending his suit. She cannot pay out of her own property, for the wife has no property she can control. This court have no power to grant her alimony to assist in the defence, or to order the husband to pay cost. Then how is she to procure counsel and witnesses to prove the falsity of his charge?

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The principal question in this case is, whether the defendant is liable to the plaintiff, for professional services, rendered for the wife of the defendant, in procuring a divorce from him, and in resisting the petition, which he preferred for the same purpose. There was no engagement or employment of the plaintiff by the defendant, but the services were evidently performed, contrary to his wishes and inclination; and if he is liable, it is on his assent, as resulting from the circumstances of the case, implied by law, even against his express wishes.

The husband is liable for necessaries furnished his wife, under such circumstances that it may be presumed he would have consented; but this usually means necessary

meats, drinks, clothing, medicines, &c.  When he turns her out of doors, without fault on her part, or she is compelled to abandon his house on account of his cruelty, she carries with her a credit for such necessary articles as may be essential to her maintenance and support, and every thing necessary for her safety and preservation.  For this purpose, legal assistance has been deemed, in some cases, to come within the meaning of necessaries, for which the husband is liable.

To exhibit articles of peace against him, to lay him under bonds to keep the peace towards her, is necessary for her personal security, to protect her from personal violence. This was the decision of Lord Ellenborough in the case of *Shepherd* v. *Mackoul*, 3 Camp. 326.  When the wife was compelled to institute proceedings against him, in law and equity, to compel him to furnish her with a support and maintenance, the legal assistance furnished was deemed necessaries, for which the husband was made liable.  *Williams* v. *Fowler*, cited in Clancy's Rights of Married Women, 52. In all such cases, it is for a jury to determine whether her treatment was such as to justify any person in furnishing her with support, or legal assistance, contrary to the wishes of the husband, and where the law will declare his assent thereto.  But to dissolve the bonds of matrimony between them, on her request, or to resist his petition for that purpose, cannot be considered as necessary for her safety or preservation, so as to enable her to procure professional assistance therefor, on his credit and at his cost.  No case is found where this was ever attempted.

In the ecclesiastical courts in England, costs may be decreed in any case when the court think proper.  Hence it is not unusual to decree costs to be paid by the husband, in suit for a divorce.  The case of *D'Aguilar* v. *D'Aguilar*, 3 Eccl. R. 329, was of this description.  The courts may, in such case, decree temporary alimony, while the suit is pending, not only for the support of the wife, but to enable her to prosecute or defend the same.  But all the powers of this court on the subject of divorce are given by statute, and the court is not authorized, either to decree temporary alimony, or award costs.  *Harrington* v. *Harrington*, 10 Vt. R. 505.

As the legislature have not thought proper to authorize the

WASHINGTON,
March,
1843.

Wing
v.
Hurlburt.

court to give cost in such case, (and the reasons are obvious and forcible, why they should not) we cannot indirectly amerce the losing party, with the expense of the proceeding, as we should if a judgment for the plaintiff could be had in this case. If such a recovery can be had in a court of law, it would necessarily lead the auditors or jury, to re-examine the ground on which the court proceeded in granting the divorce; whether the evidence showed either the necessity or expediency of prosecuting or defending the petition. Or else, to avoid this inquiry, a recovery must be permitted against the husband for professional assistance rendered in all cases of an unsuccessful application on his part, if it was defended by the wife, and in all cases of successful application on her part. The refusing the petition in the one case, and granting it in the other, would imply a fault and neglect of duty in the husband. And the rule could not be reciprocal, if the wife was the guilty party, or preferred a slanderous and groundless petition, unless she or her friends could be compelled to give him security for costs in case of failure. The objections to a recovery are so formidable, and the case is so wholly unsupported by precedent, that we are not prepared to adopt a new principle in relation to the liability of the husband, and sustain an action where none has heretofore been brought or sustained. The plaintiff, therefore, cannot recover of the defendant for professional services rendered on either of the petitions, brought by the defendant or his wife.

The question in relation to the tender was decided in the case of *Pratt* v. *Gallup*, 7 Vt. 344. Where a party intends to rely upon a tender, he cannot make the tender on the trial before the auditors, but must bring the money into court. It was also decided, in that case, that goods or services furnished or rendered, after the commencement of the suit, became a part of the account, and the party furnishing or rendering them, was not obliged, at a time subsequent to the charge, and while the suit was pending, to receive the pay for a single charge, at the hazard of having this payment turn the suit against him. If this produces either inconvenience or injustice, it cannot be remedied by the court, but must be the subject of legislative enactment. The judgment of the county court is reversed, and judgment

will be rendered for the plaintiff to recover the other part of his account, amounting to two dollars, seventy-one cents. The defendant will recover his cost in this suit, to be deducted from the cost awarded to the plaintiff in the county court.