## Medical Center Hospital of Vermont v. Derek Lorrain and Patricia Lorrain

[675 A.2d 1326]

No. 94-669

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 8, 1996

*David W. M. Conard* of *Portnow, Little & Cicchetti*, Burlington, for Plaintiff-Appellee.

*Judith L. Dillon* of *Lisman & Lisman*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Patricia Lorrain, whose husband Derek received medical services from plaintiff Medical Center Hospital of Vermont (MCHV), appeals the superior court's grant of summary judgment to MCHV, with respect to her, in this collection action against the Lorrains. We reverse.

MCHV provided care to Derek Lorrain for a work-related injury. Upon admission to the hospital, he agreed in writing to pay for uninsured or unreimbursed fees resulting from his care. MCHV did not require his wife to sign a payment guarantee. When payment of the $7000 bill was not forthcoming from either Mr. Lorrain or his workers' compensation providers, MCHV brought a collection action against the Lorrains. Patricia Lorrain opposed MCHV's motion for summary judgment, arguing that, under 15 V.S.A. § 66, a wife is not liable for the sole debts of her husband. MCHV countered that there is an exception to this general rule for necessary medical services. The superior court agreed and adopted the reasoning of a New Jersey Supreme Court decision that, faced with an equal protection challenge, extended the common-law necessaries doctrine to wives as well as husbands. See *Jersey Shore Medical Center, Inc. v. Estate of Baum*, 417 A.2d 1003, 1005 (N.J. 1980).

## I.

Patricia Lorrain contends for the first time in her reply brief that MCHV has no standing to raise its equal protection argument. While generally one may not assert the rights of others, and one must be a member of the class discriminated against to claim that a law denies equal protection, see *Lague, Inc. v. State*, 136 Vt. 413, 416, 392 A.2d 942, 944 (1978), these prudential rules may be relaxed in the appropriate circumstances. See 13 C. Wright, et al., Federal Practice and Procedure § 3531.9, at 542-43 (2d ed. 1984). When the parties are properly in court, as they are here, the question is not whether to consider a particular party's challenge to a law but rather to define the range of theories that the party may rely on in support of the challenge. In such a case, a party may assert the rights of others as long as the party is potentially aggrieved by the law, the trial court has entertained the relevant constitutional challenge, and the parties have not resisted an authoritative constitutional determination. See *Craig v. Boren*, 429 U.S. 190, 193-94, 197 (1976) (vendor has standing to raise equal-protection challenge to gender-based state liquor law).

The necessaries doctrine creates an obligation directly between the husband and the creditor. *Schilling v. Bedford Cty.*

*Memorial Hosp.*, 303 S.E.2d 905, 907 (Va. 1983). Accordingly, as the court stated in *Jersey Shore*, when the creditor seeks payment of necessary expenses from the wife, and an equal protection challenge to the necessaries doctrine arises, "the creditor is an appropriate party to assert the husband's rights." 417 A.2d at 1006-07. Here, both parties have real tangible interests in the outcome, and both sides of the issue are squarely presented for review. Thus, there is no reason to deny standing, and we decline to do so.

## II.

Having rejected appellant's standing argument, we must consider the continued validity of the necessaries doctrine in the context of an equal protection challenge.* The doctrine originated in English common law over three centuries ago when married women had no property or contractual rights and their husbands controlled their financial affairs. Note, *The Unnecessary Doctrine of Necessaries*, 82 Mich. L. Rev. 1767, 1767 (1984). Essentially, it makes husbands liable for necessities — such as food, clothing, shelter, and medical care — that are provided to their wives. See *Wing v. Hurlburt*, 15 Vt. 607, 613-14 (1843). The primary purpose of the doctrine was to assure that dependent wives received support from neglectful husbands. Note, *supra*, at 1770.

Starting in the mid-nineteenth century, states, including Vermont, began to enact statutes granting married women property and contractual rights independent of their husbands. See 15 V.S.A. §§ 61-69. Among the Vermont statutes is a provision declaring that a wife's separate property is not subject to her husband's debts. See 15 V.S.A. § 66. None of these statutes explicitly overruled the necessaries doctrine, and MCHV argues that because the doctrine remains viable today as an exception to the general rule set forth in § 66, it should be extended to wives as well as husbands.

■ There is no question that, when applied only to men, the necessaries doctrine offends the principle of equal protection under the law. The courts are unanimous on this point, which is undisputed

---

* In *Hitchcock Clinic, Inc. v. Mackie*, 160 Vt. 610, 611, 648 A.2d 817, 819 (1993) (mem.), where we upheld the superior court's summary judgment order denying a clinic recovery from a wife for medical services provided to the wife's husband during his last illness, we left the necessaries doctrine undisturbed, and declined the clinic's request that we extend the doctrine to impose liability upon wives as well as husbands. In that case, however, the clinic's equal protection claim was waived. *Id.* n.*.

by the parties. See *Landmark Medical Center v. Gauthier*, 635 A.2d 1145, 1150 (R.I. 1994). The issue, rather, is whether to remedy the equal protection violation by extending the doctrine to both wives and husbands or by abolishing it altogether. We opt for the latter remedy, notwithstanding that the majority of courts considering the issue have elected to make the doctrine reciprocal to wives and husbands. See *id.* (surveying case law on issue).

We take this position for the following reasons. First, the circumstances that led to the emergence of the necessaries doctrine no longer exist. Irrespective of their marital status, women have property and contractual rights equal to men, and thus the legal existence of married women is no longer merged into that of their husbands. See *R. & E. Builders, Inc. v. Chandler*, 144 Vt. 302, 304, 476 A.2d 540, 541 (1984). Second, because the husband's liability under the doctrine had substantial limitations, the doctrine never accomplished its purported purpose — to be an effective support mechanism for neglected wives. Among the doctrine's limitations were that (1) the items provided to the wife had to be necessities, as defined by the family's social position; (2) the husband had to have the ability to pay for the items; (3) the wife had to be either living with her husband or living apart from him through no fault of her own; and (4) the creditor had to have relied on the husband's, not the wife's, credit. See Note, *supra*, at 1772-74; 1 H. Clark, The Law of Domestic Relations in the United States § 7.3, at 446-48 (2d ed. 1987). In short, it was difficult for the creditor to know, before going to court, whether the doctrine would apply.

Some courts continue to tout the ameliorative effects on needy spouses or on the institution of marriage that will ensue from extending the doctrine to husbands and wives, but such rhetoric has been best described as "'Orwellian newspeak.'" See *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 7 (Ind. 1993) (quoting *Marshfield Clinic v. Discher*, 314 N.W.2d 326, 338 (Wis. 1982)) (Abrahamson, J., concurring in part and dissenting in part). In truth, extension of the doctrine serves creditors' rights, not spousal support rights. Indeed, studies indicate that in deciding whether to extend credit, creditors give little weight to a married woman's support rights, but are wary of her potential liability for her husband's purchases; thus, making the necessaries doctrine reciprocal to husbands and wives may even inhibit the granting of credit to creditworthy women. See *id.* (discussing congressional studies for Equal Credit Opportunity Act (ECOA)); Note, *supra*, at 1781-83 (same). Further,

extension of the doctrine would entail a radical departure from the underlying reasons and implicit assumptions upon which the doctrine's duties were based at common law. We decline to expand an antiquated support doctrine in an effort to create a family-expense law or a creditors' remedy.

Virtually all of the necessaries doctrine cases concern hospitals or clinics seeking to collect debts resulting from medical services rendered to spouses, often during a last illness. The public policy issues surrounding these circumstances are complex, and are best taken up by the Legislature in family-expense statutes, creditors' rights laws, or even comprehensive health care legislation. The Legislature, not this Court, is better equipped to assemble the facts and determine the appropriate remedies in an arena fraught with social policy involving the law of property, the institution of marriage, and the distribution of the costs of health care expenses. See *Connor v. Southwest Florida Regional Medical Ctr.*, 668 So. 2d 175, 176, 177 (Fla. 1995) (constitutional considerations demand equality between sexes, and yet judiciary is branch of government least capable of receiving public input and resolving broad public policy questions concerning liability of spouses for each other's medical services; accordingly, common-law necessaries doctrine is abrogated, and Legislature is left to determine policy of state in this area); *Condore v. Prince George's Cty.*, 425 A.2d 1011, 1019 (Md. 1981) (accord); *Schilling*, 303 S.E.2d at 908 (accord).

We recognize that, given this state's marital property law, medical providers may have legitimate concerns regarding collecting debts from uninsured or underinsured married persons in Vermont. See, e.g., *Bellows Falls Trust Co. v. Gibbs*, 148 Vt. 633, 633, 534 A.2d 210, 211 (1987) (mem.) (when spouses hold property as tenants by entirety, neither spouse has share that can be disposed of or encumbered without joinder of other spouse); *Beacon Milling Co. v. Larose*, 138 Vt. 457, 460, 418 A.2d 32, 33-34 (1980) (spouses may hold personal property, including bank accounts, as tenants by entirety; such property is protected by 15 V.S.A. § 66 from husband's sole creditors). Although these cases have not been challenged and are not in issue here, they suggest that married persons could evade payment of legitimate debts. Nevertheless, we reiterate that if indeed problems exist, they should be addressed in a comprehensive way by the Legislature, not piecemeal by this Court in cases that fail to provide us with the information necessary to determine how best to allocate financial responsibility for medical debts incurred by married per-

sons. In the meantime, medical providers are not without the means to at least shore up their financial position. See Note, *supra*, at 1781 n.64, 1791 (because creditors such as hospitals and doctors extend "incidental" credit, under ECOA they may inquire about applicant's marital status and require spouse's signature even if applicant is creditworthy).

*Reversed.*

