2011 VT 86

**RBS Citizens, N.A. f/k/a Citizens Bank of Rhode Island v. Jan M. Ouhrabka**

[30 A.3d 1266]

No. 10-415

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 5, 2011

252

*Andre D. Bouffard* and *Bruce C. Palmer* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiff-Appellant.

*Jared H. Cloutier* of *The Law Office of William P. Neylon*, St. Johnsbury, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** This is an interlocutory appeal from the trial court's denial of appellant RBS's motion for a writ of attachment of appellee Jan Ouhrabka's property, which Ouhrabka owns jointly with his wife as tenants by entirety. The trial court held that a creditor, like RBS, cannot attach property owned jointly by a

debtor and a nondebtor when they hold that property as tenants by entirety. RBS contends that the estate of tenancy by entirety is an anachronism whose continuing utility should be reconsidered. In the alternative, RBS argues that Vermont law does not explicitly preclude granting a creditor prejudgment attachment where the property is held jointly by the debtor and a nondebtor in a tenancy by entirety. We disagree and affirm.

¶ 2. The facts in the matter before us are uncontested. Ouhrabka is the sole owner of Providence Chain Co., a Rhode Island jewelry corporation with a principal place of business located in Providence, Rhode Island. On June 7, 2010, the Rhode Island superior court placed Providence Chain into receivership. As of that date, Providence Chain's outstanding indebtedness to RBS exceeded $15,000,000.

¶ 3. By execution of a personal guaranty, signed on August 31, 2006, Ouhrabka became personally liable up to $500,000 for loans to Providence Chain. Ouhrabka signed an amendment to this guaranty on March 18, 2009 which made his personal liability for debts of Providence Chain unlimited. As part of the loan process, Ouhrabka submitted a personal financial statement which listed the Vermont property in East Ryegate as a joint asset with a stated value of $250,000.

¶ 4. At the time Providence Chain was placed into receivership financial records demonstrated that liquidating the company could satisfy approximately $3,000,000 of the debt owed to RBS. RBS filed the underlying complaint, seeking to recover amounts owed by Ouhrabka to RBS pursuant to his individual unlimited guaranty with an estimated balance of $10,000,000. In conjunction with its complaint, RBS filed a motion pursuant to Vermont Rule of Civil Procedure 4.1(g) requesting the trial court place a prejudgment writ of attachment against Ouhrabka's real estate holdings, including the Vermont property. The court denied the writ,[1] holding that under Vermont common law a creditor of a single debtor can not attach property owned jointly by a debtor and a nondebtor when held as tenants by entirety. RBS moved for permission to appeal to this Court and to stay the effectiveness of the order denying attachment.[2] The court granted these motions, and we accepted the matter as an interlocutory appeal.

---

[1] The trial court had initially granted the writ of attachment on an interim basis.

[2] By stipulation of the parties, the writ of attachment that had initially been granted on an interim basis and thereafter recorded remains in effect.

¶ 5. RBS contends that because the original purpose of the estate of tenancy by entirety was to protect the survivorship rights of married women at a time when those were the only property rights which could be held by married women, such an estate is an anachronism with no place in our modern jurisprudence. In making this argument RBS points to women's historical coverture disabilities and the changes wrought by subsequent statutes. "At common law, the legal existence of a wife was suspended during the marriage . . . . [u]pon marriage, a husband acquired vested interests in his wife's property." *R. & E. Builders, Inc. v. Chandler*, 144 Vt. 302, 303-04, 476 A.2d 540, 541 (1984). Thus the "husband ha[d] the right of possession and control of property so owned by himself and wife, for their joint lives, and he [could] convey, lease, or [e]ncumber it by mortgage for the same period." *Laird v. Perry*, 74 Vt. 454, 460, 52 A. 1040, 1041 (1902), *abrogated on other grounds by Estate of Girard v. Laird*, 159 Vt. 508, 513, 621 A.2d 1265, 1268 (1993). These "rights and powers of alienation in the husband, and of attachment and levy of execution in his creditors, [we]re limited only by the wife's contingent right to the property or income by survivorship." *Id.* at 461, 52 A. at 1041.

¶ 6. "Starting in the late nineteenth century, Vermont, like other states, began to enact statutes, such as the Rights of Married Women Act, see 15 V.S.A. §§ 61-69, to grant married women property and contractual rights independent of their husbands." *Baker v. State*, 170 Vt. 194, 257, 744 A.2d 864, 908-09 (1999) (Johnson, J., concurring in part and dissenting in part) (citing *Med. Ctr. Hosp. v. Lorrain*, 165 Vt. 12, 14, 675 A.2d 1326, 1328 (1996)). "The Legislature's intent in enacting the Rights of Married Women Act was to reject the archaic principle that husband and wife are one person, and to set a married woman free from the thralldom of the common law." *Id.* at 257, 744 A.2d at 909 (quotations omitted). After enactment of these statutes, the legal existence of married women was no longer merged into that of their husbands. *Med. Ctr. Hosp.*, 165 Vt. at 15, 675 A.2d at 1329; see *Sargent v. Platt*, 111 Vt. 185, 188, 13 A.2d 195, 197 (1940) ("It is now certain that a married woman has a separate estate in property conveyed to herself and husband as tenants by entirety since the enactment of [a portion of the Rights of Married Women Act, see 15 V.S.A. § 64], as it gives her the management and control of her interest therein.").

¶ 7. RBS argues that as a result of these fundamental changes the legal fiction of husband and wife as one person is fundamentally at odds with their equal rights of property ownership and thus should be abolished. RBS acknowledges that in our post-Act decisions this Court has not treated the tenancy by entirety as having been abolished. See, e.g., *Sargent*, 111 Vt. at 188, 13 A.2d at 197. Nevertheless, RBS argues that the theoretical basis for this estate remains irreconcilable with the statutory command that a married woman is a separate legal person that can own, mortgage, convey, and control real property independent of her husband. We disagree.

¶ 8. RBS seems to contend that the estate of tenancy by entirety was based in married women's inability to control and manage marital property at common law and that once the disabilities of coverture were removed, the entire "theoretical basis" for the estate was abrogated. But the estate never flowed from the married woman's common law disabilities; rather, it "result[ed] from the common-law principle of marital unity." *Lang v. Comm'r of Internal Revenue*, 289 U.S. 109, 111 (1933) ("The tenancy . . . is said to be *sui generis*. Upon the death of one of the tenants the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from participation by the other.") (quotation omitted). RBS mistakenly equates the concept of marital unity with the subsumption of a married woman's legal existence into that of her husband at common law. Historically, marital unity has always been distinct from the antiquated concepts of a wife's coverture disabilities and a husband's common law right to possession and management of marital property. See, e.g., *Laird*, 74 Vt. at 461, 52 A. at 1041 ("But the husband has an interest which does not flow from the unity of the estate, and in which the wife has no concern. He is entitled to the use and possession of the property during the joint lives of himself and wife."). The unity of estate is the defining characteristic of a tenancy by entirety and results from the manner in which the parties take title. In an early case delineating the difference between joint tenants and tenants by entirety, this Court explained: "in [the] case of joint tenants each [party] has a seizin of the whole but a title only to his aliquot part." *Park v. Pratt*, 38 Vt. 545, 550 (1866). A tenancy by entirety "differs from a joint tenancy in the entirety of title as well as seizin of each grantee in the whole estate; they have but one title and each

owns the whole." *Id.* Thus the "theoretical basis" of tenancy by entirety was and is premised on the manner in which the spouses take title — in its entirety — and the manner in which the parties are seized — of the whole. It is not, as RBS contends, based in the concept of a married woman's inability to freely own property at common law. While the Rights of Married Women Act vested married women with equal rights to manage marital property, it did nothing, explicitly or implicitly, to alter the quality of the marital unity, seizing, or title.

¶ 9. The Hawaii Supreme Court came to a similar conclusion in addressing the question of the effect of an analogous statute on the estate of tenancy by entirety:

> The effect of the Married Women's Property Acts was to abrogate the husband's common law dominance over the marital estate and to place the wife on a level of equality with him as regards the exercise of ownership over the whole estate. The tenancy was and still is predicated upon the legal unity of husband and wife, but the Acts converted it into a unity of equals and not of unequals as at common law. No longer could the husband convey, lease, mortgage or otherwise encumber the property without her consent. The Acts confirmed her right to the use and enjoyment of the whole estate, and all the privileges that ownership of property confers, including the right to convey the property in its entirety, jointly with her husband, during the marriage relation.

*Sawada v. Endo*, 561 P.2d 1291, 1295 (Haw. 1977) (citations omitted). We conclude the theoretical basis of tenancy by entireties remains intact and that the estate enjoys continued validity in Vermont.[3]

¶ 10. RBS contends that even if the Rights of Married Women Act did not abrogate the estate of tenancy by entirety, nothing in Vermont law constrains this Court from holding that

---

[3] Our holding today is by no means unique. While some jurisdictions treat tenancy by entirety as having been abolished by enactment of statutes similar to Vermont's Rights of Married Women Act, the majority of those that recognized the estate at common law continue to do so. See O. Phipps, *Tenancy by Entireties*, 25 Temp. L.Q. 24, 29 (1951); 1 W. Brown, The Law of Debtors and Creditors § 684, n.3 (June 2011).

the creditor of a debtor spouse can attach tenancy-by-entirety property owned jointly by the debtor and a nondebtor spouse. It is true that no Vermont statute explicitly precludes such an outcome. See generally 12 V.S.A. §§ 3251-3410. However, Civil Rule 4.1(a), which governs attachment, explains that: "[i]n any action under these rules (except an action for malicious prosecution, libel, or slander), real estate, goods and chattels, and other property may, in the manner and *to the extent provided by law* and by this rule, be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover." V.R.C.P. 4.1(a) (emphasis added). The phrase "to the extent provided by law" implicitly limits the availability of attachment to the scope defined by laws external to the rule — including our common law.

■ ¶ 11. This Court has long held that "[t]he estate of the wife and the husband's interest in her tenancy by the entirety, if validly created, is protected from the husband's sole creditors." *Rose v. Morrell*, 128 Vt. 110, 112, 259 A.2d 8, 10 (1969); see also *Bellows Falls Trust Co. v. Gibbs*, 148 Vt. 633, 633, 534 A.2d 210, 211 (1987) (mem.) (holding that "[n]either spouse has a share [of tenancy by entirety property] which can be disposed of or encumbered without the joinder of the other spouse."); *Lowell v. Lowell*, 138 Vt. 514, 515-16, 419 A.2d 321, 322 (1980) (holding that property held by husband and wife in tenancy by entirety cannot be reached by husband's creditors absent fraud); *Town of Corinth v. Emery*, 63 Vt. 505, 508, 22 A. 618, 619 (1891) (holding that property held by husband and wife in tenancy by entirety is exempt from attachment or execution for the sole debts of husband). RBS admits that when property is held in tenancy by entirety neither spouse may convey their interest voluntarily, without the consent of the other. However, RBS draws a distinction between voluntary conveyances and involuntary attachments. RBS argues, that while it is beyond dispute that no voluntary conveyance of an interest in entireties property may be made without joinder of both owners, see 27 V.S.A. § 349(a)(3), this Court's decisions concerning involuntary attachment cannot be read to preclude prejudgment attachment of a debtor spouse's separate interests for that spouse's sole debt.

■ ¶ 12. Our past decisions do not distinguish voluntary conveyances of tenancy by entirety property from involuntary attachments. See, e.g., *Corey v. McLean*, 100 Vt. 90, 91, 135 A. 10, 11

(1926) (holding that marital property "was not attachable for the [sole] debts of the husband" because it was held in tenancy by entirety). Furthermore, despite RBS's contention that numerous decisions from other jurisdictions support its proposition that tenancy by entirety property may be attached, most jurisdictions recognizing the estate do not allow a creditor of a single debtor to attach property held jointly by the debtor and the nondebtor in a tenancy by entirety. See Brown, *supra*, § 6:84 ("Most jurisdictions that recognize tenancies by the entirety hold that a creditor of one spouse cannot reach the debtor spouse's share in the property."); see also *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978) ("[H]usband and wife are seized, not merely of equal interests, but of the whole estate during their lives and the interest of neither of them can be sold, attached or liened except by the joint act of both husband and wife.") (quotation omitted); *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla. 2001) (explaining elements of tenancy by entirety); *Keen v. Keen*, 60 A.2d 200, 204 (Md. 1948) (noting property held as tenancy by entirety could not be "levied upon or attached for the debts of either the husband or the wife.").

■ ■ ¶ 13. RBS advances the policy argument that distinguishing between voluntary conveyance and involuntary attachment is of great importance because to prohibit involuntary attachment of tenancy by entirety properties would allow assets to be unfairly shielded from one spouse's creditors. This argument is unpersuasive. If a spouse transfers property into a tenancy by entirety to evade his creditors, the creditor is not without remedy: it can pursue an action for fraud. See 12 V.S.A. § 2808 (providing for action in superior court when property "is held in fraud of the levying creditor's rights"). Of course, if the asset was held in a tenancy by entirety before the issuance of the debt, an action for fraud would not lie — but neither could the creditor argue the asset was *unfairly* shielded from attachment. At the time of contracting, a creditor may always require both tenants by entirety to assume liability for a debt; it may also decline to issue credit absent sufficient security. RBS here is a sophisticated lender and was aware that Ouhrabka's property was held in tenancy by entirety. RBS could have required Ouhrabka's spouse to cosign the loan and unlimited guaranty. It failed to do so. This

Court will not now correct RBS's error through wholesale revision of Vermont entireties law.

*Affirmed.*