*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-062

NOVEMBER TERM, 2011

| | |
|---|---|
| Anchor Foundations, Inc. | } APPEALED FROM: |
| | } |
| | } |
| v. | } Superior Court, Franklin Unit, |
| | } Civil Division |
| | } |
| R. Scott Ingalls d/b/a Ingalls & Ingalls | } DOCKET NO. S52-09 Fc |
| Builders, Inc. and Casing Development, Inc. | } |

Trial Judge: Ben W. Joseph, A. Gregory Rainville

In the above-entitled cause, the Clerk will enter:

Plaintiff Anchor Foundations, Inc. (Anchor) appeals a summary judgment dismissing claims for money owed and fraudulent conveyance against R. Scott Ingalls and Casing Development, LLC, and from an order denying a motion to add Elizabeth Ingalls as a named defendant. Anchor contends the orders were erroneous because the trial court failed to allow adequate time for discovery. We affirm.

The record evidence may be summarized as follows. Ingalls & Ingalls, Inc., a construction company based in Essex Junction, hired Anchor to perform concrete work on several projects. In February 2009, Anchor filed a complaint against Ingalls & Ingalls, Inc., its principal owner R. Scott Ingalls, and Casing Development, LLC for approximately $45,000 allegedly owed on the projects. Anchor also alleged that Ingalls had conveyed property located at 125 Bridge Street in the City of Richmond to Casing Development with the intent to defraud, and moved for a writ of attachment against the property. The court (Judge Rainville) held a hearing on the motion in March 2009, and issued a written decision in July 2009, denying the motion.

The court found that Ingalls and his wife Elizabeth had purchased the subject property at 125 Bridge Street in 2005 from Casing, a development company that Ingalls then jointly owned with his cousin John Caswell. The property that the Ingalls purchased was a small portion of a 6-acre parcel that Casing hoped someday to develop. The Ingalls purchased the property for $60,500 with the intention of building a home on it to be used as their principal residence. The Ingalls experienced financial problems, however, and in October 2008 a complaint for foreclosure was filed against their residence in Essex Junction. To raise money and forestall the foreclosure, in November 2008, Ingalls sold most of his interest in Casing Development to his partner Caswell for about $80,000, and Ingalls and his wife reconveyed the Bridge Street property to Casing Development for about $133,000.

In its complaint and motion for writ of attachment, Anchor claimed that Ingalls was personally liable for the $45,000 debt and that he fraudulently conveyed the Bridge Street

property to Casing to avoid payment, in violation of 9 V.S.A. § 2288. The trial court found, however, that Anchor had adduced no evidence that the indebtedness was incurred by Ingalls individually or in any capacity other than as a representative of Ingalls & Ingalls, Inc. Furthermore, the court noted that even if Ingalls could somehow be held personally liable, the property in question was held by R. Scott Ingalls and Elizabeth Ingalls as husband and wife, and was therefore protected from husband's sole creditors. See RBS Citizens, N.A. v. Ouhrabka, 2011 VT 86, ¶ 11 (reaffirming rule that property held by husband and wife in tenancy by entirety cannot be reached by husband's creditors). Accordingly, the court denied the writ of attachment.

Ingalls and Casing subsequently moved for summary judgment, and Anchor moved to amend its complaint to add Elizabeth Ingalls as a named defendant. The court (Judge Joseph) initially denied the motion for summary judgment, but later granted a motion to reconsider and issued an order granting summary judgment. The court explained that it had reviewed the recorded testimony at the attachment hearing, particularly that of Anchor's president, who "testified repeatedly that he had only dealt with Mr. Ingalls in his capacity as an officer of Ingalls and Ingalls, Incorporated." Ingalls had also testified that the debt was owed solely by the corporation, and that he had not entered any agreements in his personal capacity or personally guaranteed any corporate debts. The court further found no factual basis for a claim against Ingalls' wife, an officer of the corporation, in her individual capacity. Accordingly, the court granted the motion for summary judgment, denied the motion to amend, and entered a final judgment under V.R.C.P. 54(b). This appeal followed.

Anchor contends the court erred in granting the motion for summary judgment and denying the motion to amend before it had completed discovery—defendant Casing had failed to respond to certain interrogatories and a motion to compel remained pending. Anchor contends that material, disputed issues remained as to whether it had any direct dealings with Casing, and whether Ingalls "abused the corporate form in order to shuttle assets from one entity to another in order to escape liabilities incurred by Ingalls and Ingalls Builders, Inc." It also asserts that the motion to amend was proper because Ingalls' wife was a corporate officer and it could show that she was involved in the fraudulent intermingling of assets.

As we have explained, "Rule 56 does not require that summary judgment motion decisions await completion of discovery, and to so require would defeat the purpose of the rule. The court need only permit an adequate time for discovery." Bushey v. Allstate Ins. Co., 164 Vt. 399, 405 (1995) (citations omitted). The record here shows that Anchor had an adequate opportunity to examine the nature of its dealings with Ingalls & Ingalls, Inc. through the testimony of its own president, who acknowledged that he dealt with Ingalls solely in his capacity as a representative of the corporation, and of Ingalls, who reinforced that view, and the trial court so found. Anchor has not shown that further discovery would refute these findings. Anchor also explored the nature and circumstances surrounding the sale of the property in question from the Ingalls to Casing, and in so doing adduced no evidence of fraudulent intent. It has not shown that further discovery would provide additional relevant evidence on this issue. Nor, finally, has Anchor shown that additional discovery would refute the undisputed evidence that the property in question was held by the Ingalls as husband and wife, and therefore was not subject to attachment for Ingalls' individual debts. Accordingly, we discern no basis to disturb the judgment.

Affirmed.

2

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Brian L. Burgess, Associate Justice

3